UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MEDA CHINGAREV,

        Plaintiff,

v.                                    Case No:  2:22-cv-494-JLB-NPM

KEVIN RAMBOSK, BRIAN
SUDANO, and LAURA
GAMBINO,

        Defendants.

_____/

## <u>ORDER</u>

This matter comes before the Court on two motions to dismiss.  (Docs. 16, 17).

Plaintiff has responded to each of the motions to dismiss.  (Docs. 19, 20).  For the

following reasons, the Motions to Dismiss are each **GRANTED in part and**

**DENIED in part**.

## BACKGROUND[1]

On June 8, 2020, at approximately 1:15 p.m., Plaintiff, a then sixteen-year-

old female of eastern European descent, was inside her residence in Naples, Florida.

(Doc. 1 at ¶¶ 9, 12, 174).  Defendant Deputies Brian Sudano and Laura Gambino

came to Ms. Chingarev's residence and knocked on the door citing a noise

---

[1] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and
the reasonable inferences therefrom are construed in the light most favorable to the
plaintiff."  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999)
(citation omitted).  Accordingly, this background section relies on the facts recited in
the Complaint.  (*See* Doc. 1).

complaint. (*Id.* at ¶ 15). Ms. Chingarev and her mother, Jurgita Chingarev ("Ms. Chingarev's mother"), informed Deputies Sudano and Gambino that there was an ongoing dispute with the Chingarevs' neighbors regarding the noise complaint. (*Id.* at ¶ 16). Ms Chingarev's mother identified herself to Deputy Gambino. (*Id.* at ¶ 17). Deputy Sudano asked for identification in order to write up the noise complaint, but Ms. Chingarev's mother stated that she did not have any more time to talk to the deputies and turned to walk back into the house. (*Id.* at ¶¶ 18–19).

Deputy Sudano then stated that there was a warrant out for Ms. Chingarev's arrest, which Ms. Chingarev alleges was not true, and directed her to put her hands behind her back. (*Id.* at ¶ 20). Ms. Chingarev began to question the officers as to why she was being arrested, but Deputy Sudano offered no explanation and simply stated, "[t]urn around," before physically striking Ms. Chingarev on the back. (*Id.* at ¶ 21). Deputy Sudano then grabbed Ms. Chingarev by her hair and forcefully pushed her, causing a heavy object to damage Ms. Chingarev's right foot. (*Id.* at ¶ 22). Deputy Sudano then stomped on Ms. Chingarev's bare feet and once she was on the floor, kneeled on her back while putting on her handcuffs and forcefully removed her cell phone from her hand so she could not further record his actions. (*Id.* at ¶ 23). Ms. Chingarev did not strike, kick, resist, or become violent with Deputy Sudano or Deputy Gambino. (*Id.* at ¶ 24).

After she was detained, Ms. Chingarev was forced to stand on hot asphalt in her bare feet and was then kept in a vehicle with no air conditioning before being transported to the Naples Juvenile Justice Center. (*Id.* at ¶ 26). Ms. Chingarev

informed the deputies and certain medical personnel in jail that she was experiencing foot pain, but no one examined her foot. (*Id.* at ¶ 28). Ms. Chingarev alleges she was wrongfully incarcerated for approximately six hours. (*Id.* at ¶ 30). The next day, on June 9, 2020, she was placed on twenty-one days' house arrest. (*Id.*)

On January 4, 2021, Ms. Chingarev was found not guilty of battery on a law enforcement officer, not guilty of resisting an officer with violence, and guilty of obstruction. (*Id.* at ¶ 31). Ms. Chingarev was placed on formal probation for 24 hours post trial. (*Id.* at ¶ 32).

On August 15, 2022, Ms. Chingarev filed her Complaint. (Doc. 1). On October 27, 2022, Defendant Deputies Gambino and Sudano filed their motion to dismiss. (Doc. 16). On that same date, Defendant Sheriff Rambosk filed his motion to dismiss. (Doc. 17).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). This standard of plausibility is met when the plaintiff pleads enough factual content "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When reviewing a motion to dismiss, courts must accept all factual allegations contained in a complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). Legal conclusions, however, "are not entitled to the assumption of truth." *Ashcroft*, 556 U.S. at 679. "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## DISCUSSION

I.    <u>Whether the Complaint is a shotgun pleading</u>.

Defendants argue that the Complaint is a shotgun pleading because it "contains many conclusory, vague, and material facts not obviously connected to any particular cause of action as well as asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." (Doc. 16 at 4; Doc. 17 at 5).

The Federal Rules of Civil Procedure provide that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and that a "party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 10(b). Complaints that fail to meet these standards are sometimes referred to as "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has "repeatedly condemned shotgun pleadings," explaining that they "fail[] to give the

defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Embree v. Wyndham Worldwide Corp.*, 779 F. App'x 658, 662 (11th Cir. 2019) (citing *Weiland*, 792 F.3d at 1321 n.9, 1323).

The Eleventh Circuit has enumerated four general types of shotgun complaints. *Weiland*, 792 F.3d at 1321. The type that Defendants claim is at issue here is a complaint that is "guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322, n.12 (citing, *inter alia*, *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n.9 (11th Cir. 1997)). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

The Court disagrees with Defendants' evaluation of the Complaint. Each count specifically notes which of the background paragraphs pertains to that particular count. (*See, e.g.*, Doc. 1 at ¶¶ 57, 65, 77). Additionally, each count indicates which defendant it pertains to. (*See, e.g.*, Doc. 1 at 9–11). Although the Complaint is by no means a perfect pleading, the Court finds that it generally gives each of the Defendants fair notice of the grounds on which Plaintiff's claims rest and thus declines to dismiss the Complaint in its entirety on this basis. That said, the Court will address specific concerns as it analyzes the different counts of the Complaint.

II.     <u>Whether Sheriff Rambosk should be dismissed in his individual capacity.</u>

The Complaint states that Sheriff Rambosk "is being sued in his individual and official capacities."  (Doc. 1 at ¶ 10).  Sheriff Rambosk argues (Doc. 17 at 6) that he should be dismissed in his individual capacity, in part because none of the counts in the Complaint are brought against him in his individual capacity.  (*See* Doc. 1).  Indeed, the Complaint indicates which defendants each count applies to, but Sheriff Rambosk, in his ***individual*** capacity, is never mentioned.  (*See id.* at 9–22).  Plaintiff inexplicably fails to respond to this argument but argues that she "properly advanced claims against Defendant Rambosk in his individual capacity."  (Doc. 19 at 7–9).

Because the Complaint asserts no claims against Sheriff Rambosk in his individual capacity, there is nothing for this Court to dismiss and the Court therefore declines to reach the issue of Sheriff Rambosk's qualified immunity at this juncture.

III.    <u>Whether the claims against Deputies Sudano and Gambino should be dismissed because of qualified immunity.</u>

"A complaint is subject to dismissal under Rule 12(b)(6) when its factual allegations, on their face, establish an affirmative defense that bars recovery." *Myrick v. Fulton Cnty., Ga.*, 69 F.4th 1277, 1297 (11th Cir. 2023) (citing *Ingram v. Kubik*, 30 F.4th 1241, 1250 (11th Cir. 2022)).  "That means that if a defendant raises the affirmative defense of qualified immunity, the district court must dismiss any claims that do not allege a violation of clearly established law." *Id.* (citing *Ingram*, 30 F.4th at 1250).

6

"Qualified immunity 'shields a government official from liability unless he violates "clearly established statutory or constitutional rights of which a reasonable person would have known."'" *Id.* (quoting *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 951 (11th Cir. 2019)). Qualified immunity balances two public interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Baker v. City of Madison, Ala.*, 67 F.4th 1268, 1278 (11th Cir. 2023) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)) (internal quotation marks omitted).

A "defendant asserting the qualified immunity defense bears the initial burden of showing that he or she was acting within his or her discretionary authority." *Myrick*, 69 F.4th at 1297 (citing *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 951 (11th Cir. 2019)); *see also Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (11th Cir. 2003) ("Under qualified immunity analysis, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly unconstitutional acts took place."). Only **after** the defendant makes that showing does "the burden shift[] to the plaintiff to show that qualified immunity is not appropriate." *Myrick*, 69 F.4th at 1297 (citing *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). To determine whether a defendant acted within his or her discretionary authority, courts "assess whether they are of a type that fell within the employee's job responsibilities." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). Courts ask "whether the government employee

was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Id.* at 1265–66.

Here, Defendants state that Deputies Sudano and Gambino were acting within their capacity as deputies and were acting within their discretionary authority. (Doc. 16 at 15–18). But their analysis stops there, resulting in little more than a conclusory statement in support of this defense. Because Defendants bear the burden of showing that they were acting within their discretionary authority, the Court will not dismiss any counts on qualified immunity grounds but will allow Defendants to re-assert this argument in a later motion to dismiss or at the summary judgment stage, preferably with non-conclusory arguments showing that the deputies were acting within their discretionary authority.

IV.   Whether certain claims must be dismissed because Plaintiff was found guilty of obstruction of justice.

Defendants argue that Counts One, Two, Three, Six, and Seven are barred because, under the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994), such an action would be a collateral attack on Plaintiff's criminal conviction. (Doc. 16 at 5–10; Doc. 17 at 11 (incorporating section containing *Heck* argument into Sheriff Rambosk's Motion to Dismiss)). Plaintiff responds that *Heck* does not apply to plaintiffs who are not in custody or were in custody for too short a time to effectively pursue habeas relief. (Doc. 20 at 7–8).

In *Heck v. Humphrey*, the Supreme Court held that a civil rights claim under 42 U.S.C. § 1983 "could not be brought by a prisoner for damages if the adjudication of the civil action in the plaintiff's favor would necessarily imply that his conviction

8

or sentence was invalid unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Morrow v. Fed. Bureau of Prisons*, 610 F.3d 1271, 1272 (11th Cir. 2010) (summarizing *Heck*).  In other words, *Heck* bars claims that "would, if successful, necessarily imply the invalidity of the conviction because they would negate an element of the offense." *Hughes v. Lott*, 350 F.3d 1157, 1160 n.2 (11th Cir. 2003).  The Eleventh Circuit has not squarely decided whether *Heck* applies to bar a plaintiff's section 1983 claim where a plaintiff is no longer incarcerated:

> "A circuit split has developed regarding the application of *Heck* to situations where a claimant, who may no longer bring a habeas action, asserts a § 1983 complaint attacking a sentence or conviction." *Domotor v. Wennet*, 630 F. Supp. 2d 1368, 1376–77 (S.D. Fla. 2009) (collecting cases).  This circuit has not definitely answered the question. *See Abusaid v. Hillsborough Cnty. Bd. of Cnty. Com'rs*, 405 F.3d 1298, 1316 n.9 (11th Cir. 2005) (discussing "the [open] question of whether *Heck* bars § 1983 suits by plaintiffs who are not in custody," and noting "[o]ur court has not yet weighed in on this issue").  There are cases from this circuit that have suggested that *Heck* never applies to such a suit, *see Harden v. Pataki*, 320 F.3d 1289, 1298 (11th Cir. 2003), while others suggest *Heck* would almost always apply, *see Vickers v. Donahue*, 137 F. App'x 285, 289–90 (11th Cir. 2005) (per curiam) (unpublished).  Still other cases have suggested a middle ground—that application of *Heck* turns on whether the plaintiff had a meaningful opportunity to file for habeas relief while incarcerated. *See Morrow v. Fed. Bureau of Prisons*, 610 F.3d 1271, 1272 (11th Cir. 2010) ("This case is one in which the alleged length of unlawful imprisonment–10 days–is obviously a duration that a petition for habeas relief could not have been filed and granted while Plaintiff was unlawfully in custody."); *see also id.* at 1273–74 (Anderson, J., concurring).

*Topa v. Melendez*, 739 F. App'x 516, 519 n.2 (11th Cir. 2018).

9

Here, the Complaint alleges that Plaintiff was wrongfully incarcerated for only six hours and then was given a twenty-one-day house arrest. (Doc. 1 at ¶ 30). It is unclear whether *Heck* applies to a complaint with these allegations, and neither Plaintiff nor Defendants engaged in any meaningful analysis on this issue. Accordingly, the motions to dismiss as to Counts One, Two, Three, Six, and Seven are denied without prejudice to Defendants, should they choose to do so, renewing their argument with a discussion of whether *Heck* applies to this matter.

V.   <u>Malicious prosecution – Sheriff.</u>

Count Six of the Complaint alleges a claim for malicious prosecution under Florida state law against Deputies Sudano and Gambino, in their individual capacities, and Sheriff Rambosk, in his official capacity. (Doc. 1 at ¶¶ 100–13). Deputies Sudano and Gambino's only arguments related to Count Six were addressed in the previous section. Sheriff Rambosk argues that Florida law is clear that malice is a required element to a malicious prosecution claim, and Fla. Stat. § 768.28(9)(a) bars claims against the Sheriff in his official capacity for conduct committed with malice. Therefore, the Sheriff contends that there can be no claim for malicious prosecution against him in his official capacity. (Doc. 17 at 12). Plaintiff does not respond to this argument. (*See* Doc. 19).

The Eleventh Circuit has previously affirmed the dismissal of malicious prosecution claims against a sheriff's office, citing that "Fla. Stat. § 768.28(9)(a)—which provides that the State and its subdivisions 'shall not be liable in tort for the acts or omissions of an officer, employee, or agent . . . committed . . . in a manner

exhibiting wanton and willful disregard of human rights, safety, or property'—bars claims for . . . malicious prosecution." *Weiland*, 792 F.3d at 1330.  Because Sheriff Rambosk, in his official capacity, is the Sheriff's Office (*see Erickson v. Hunter*, No. 95-387-CIV-FTM-17D, 1996 WL 427769, at *1 (M.D. Fla. Apr. 10, 1996) ("Sheriff Hunter, in his official capacity, *is* the Collier County Sheriff's Office") (emphasis in original)), Count Six is dismissed as to Sheriff Rambosk in his official capacity.

VI.  <u>Whether the equal protection claim should be dismissed because Plaintiff has not identified similarly situated individuals outside her protected class.</u>

Count Eight, brought against Deputies Sudano and Gambino in their individual capacities, and Sheriff Rambosk, in his official capacity, brings a claim for deprivation of rights and denial of equal protection of the laws under Florida Statutes §§ 760.07 and 760.08.  (Doc. 1 at ¶¶ 125–38).  Specifically, Plaintiff claims that Defendants "intentionally and violently struck Plaintiff's body, offered false statements to law enforcement officials against her, . . . verbally denigrated her, maliciously prosecuted her, and improperly caused [her] wrongful arrest" because of "discriminatory proclivities towards individuals of the same race, color, ethnicity, or national origin as to Plaintiff."  (*Id.* at ¶ 126).  Moreover, Plaintiff alleges that "Defendants Sudano and Gambino also engaged in the selective treatment of Plaintiff, in comparison to others similarly situated."  (*Id.* at ¶ 129).  Count Nine, in turn, brought only against Deputies Sudano and Gambino in their individual capacities, states that they were "motivated by a discriminatory animus," "applied facially neutral penal statutes with adverse effects against Plaintiff," and "did not

possess a rational basis, excuse or justification" for their actions.  (*Id.* at ¶¶ 144–45).
Defendants argue that Plaintiff has not alleged any similarly situated individuals
outside her protected class who were engaged in the same conduct and were not
arrested and has not shown that she was "singled out for prosecution."  (Doc. 16 at
10–11) (internal quotation marks omitted).

Plaintiff's claim that Deputies Sudano and Gambino "engaged in the selective
treatment of Plaintiff, in comparison to others similarly situated" (Doc. 1  at ¶ 129),
along with her claim that they have "discriminatory proclivities" towards
individuals like Ms. Chingarev, who are from Eastern Europe (*id.* at ¶¶ 126–27), is
less than clear.  But the threshold for surviving a motion to dismiss is a low one.  At
bottom, taking the allegations in the Complaint as true—as this Court must at this
stage of litigation—the allegations bring Defendants within the ambit of Florida
Statutes §§ 760.07 and 760.08. *Compare Smith v. Ocala Inn Mgmt., Inc.*, No. 5:10-
cv-168-Oc-32JRK, 2010 WL 4665958, at *2 (M.D. Fla. Nov. 9, 2010) ("Although the
Complaint is not a model of pleading, taking all the allegations of fact put forward
by [plaintiff] as true" and "the burden to eventually prove the facts alleged remains
upon [plaintiff], [plaintiff's] allegations, when assumed true, present a plausible
case of discrimination") *with Velez v. Levy World Ltd. P'ship*, 182 F. App'x 929, 931
(11th Cir. 2006) (affirming summary judgment in favor of defendants where
plaintiffs could not identify a similarly situated group of Caucasian patrons who
were treated better than plaintiffs and thus plaintiffs did not establish a prima facie
case of accommodations discrimination).

VII.   Whether the intracorporate conspiracy doctrine precludes Plaintiff's conspiracy claim.

Count Ten of the Complaint alleges that Deputies Sudano and Gambino engaged in a conspiracy against Ms. Chingarev to deprive her of the equal protection of the laws.  (Doc. 1 at ¶¶ 148–54). More specifically, the Complaint alleges that Deputies Sudano and Gambino "committed overt acts in furtherance of their conspiracy against Plaintiff, namely the offering of knowingly false sworn statements, accounts or testimony intended to wrongly inculpate Plaintiff." (*Id.* at ¶ 150).

The elements of a cause of action under 42 U.S.C. § 1985(3) are:

> (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Childree v. UAP/GA CHEM, Inc.*, 92 F.3d 1140, 1146–47 (11th Cir. 1996) (citing *Lucero v. Operation Rescue*, 954 F.2d 624, 627 (11th Cir. 1992)).  "The second element 'requires a showing of some "racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."'" *Id.* at 1147 (quoting *Lucero*, 954 F.2d at 528).  "Section 1985(3) provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979).

Deputies Sudano and Gambino present two arguments in support of their motion to dismiss this claim.  First, they argue that Plaintiff's conspiracy claim fails

because Plaintiff's conviction for obstruction *implies* the existence of probable cause. (Doc. 16 at 12).  The Court is not able to discern the thrust of this argument. Second, Deputies Sudano and Gambino argue that because they are both agents of the Collier County Sheriff's Office, they cannot conspire with one another because of the intracorporate conspiracy doctrine.  (*Id.* at 12–13).

"Under the intracorporate conspiracy doctrine, a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation."  *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000).  "This doctrine stems from basic agency principles that attribute the acts of agents of a corporation to the corporation, so that all of their acts are considered to be those of a single legal actor."  *Id.* (internal quotation marks and citation omitted).  The Eleventh Circuit has applied this doctrine to both private corporations and public, government entities.  *Id.* (applying doctrine to conspiracy claim against county employees).  The intracorporate conspiracy doctrine bars § 1985(3) claims where the only alleged conspirators are government employees who were acting "in the scope of their employment."  *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1261 (11th Cir. 2010) (internal quotation marks and citation omitted).

In *Grider v. City of Auburn, Alabama*, the Eleventh Circuit analyzed a conspiracy claim against two officers, finding that the intracorporate conspiracy doctrine applied to the claim.  *Grider*, 618 F.3d at 1262.  The Eleventh Circuit reasoned:

> Both Defendants . . . are law enforcement officers with the
> APD.   No outsiders are involved.   The subject of their
> alleged conspiracy—prosecution of Plaintiff . . . by making
> a false bribery charge—involves job-related functions well
> within Defendants' scope of employment as police
> officers. . . . [T]he question of whether a defendant acted
> within the scope of his employment is distinct from
> whether the defendant acted unconstitutionally.   The
> scope-of-employment inquiry is whether the employee
> police officer was performing a function that, but for the
> alleged constitutional infirmity, was within the ambit of
> the officer's scope of authority . . . and in furtherance of the
> employer's business.

*Id.* at 1261.  In that case, the Eleventh Circuit concluded that it was within an

officer's duties to "make bribery charges against [Plaintiff.]"  *Id.* at 1262.

Here, Plaintiff does not allege that the Defendant Deputies acted outside the

scope of their duties (and, in fact, alleges multiple times, in the *alternative* in other

claims, that they acted *within* the scope of their employment).  (*See* Doc. 1 at ¶¶ 91,

110, 135).  While the Deputies' alleged behavior is extremely disturbing, the Court

would have a hard time accepting the argument that it was outside of a deputy's

scope of employment to arrest a citizen and transport her to a juvenile justice

facility.  (*See id.* at ¶¶ 20–26).

Accordingly, the Court dismisses Count Ten because it finds that the

intracorporate conspiracy doctrine precludes this claim.

VIII.   <u>Whether the failure to intervene claim should be dismissed.</u>

Count Eleven is a claim for failure to intervene under 42 U.S.C. § 1983

against Deputy Gambino.  (Doc. 1 at ¶¶ 155–58).  Plaintiff alleges that Deputy

Gambino was "present but did not actively participate in the aforementioned

unlawful conduct[,] observed such conduct, had an opportunity and the capability to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene." (*Id.* at ¶ 156).

The Eleventh Circuit has held that an officer who is present at a scene and fails to "take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341–42 (11th Cir. 2007) (quoting *Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir. 2002)) (internal quotation marks omitted). "Therefore, an officer who is present at such a beating and fails to intervene may be held liable though he administered no blow." *Id.* (citing *Skrtich*, 280 F.3d at 1302). "This liability, however, only arises when the officer is in a position to intervene and fails to do so." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir. 2000).

Deputy Gambino argues that the Complaint does not establish that there were "egregious, clear-cut, allegations and opportunity to intervene" and thus should be dismissed. (Doc. 16 at 13–14) (internal quotation marks omitted). The Court disagrees. The Complaint alleges that Deputy Gambino was present at the scene where Deputy Sudano allegedly struck and pushed Ms. Chingarev, grabbed her by the hair, caused a heavy object to damage her foot, and stomped on her bare feet. (*See* Doc. 1 at ¶¶ 15–23). The Complaint also alleges that Deputy Gambino failed to intervene with such conduct. (*Id.* at ¶ 156). For the purposes of a motion to dismiss, these allegations are sufficient. *See Heflin v. Miami-Dade Cnty.*, 393 F. App'x 658, 660 (11th Cir. 2010) (finding "sufficient factual allegations to state a

16

claim under § 1983 for a failure to intervene" where complaint alleged that "even if some of the Defendants did not personally commit the constitutional violations, they nevertheless witnessed the unlawful acts, had the opportunity to intervene, but failed to do").

IX.   **Whether the negligent hiring, training, retention, and supervision claim should be dismissed because of sovereign immunity.**

Count Twelve is a negligent hiring, training, retention and supervision claim under Florida state law against Sheriff Rambosk, in his official capacity.  (Doc. 1 at ¶¶ 159–70).  Specifically, the Complaint alleges that Sheriff Rambosk failed to conduct an appropriate investigation prior to hiring Deputies Sudano and Gambino, knew that they were unfit for employment as law enforcement officers but failed to take any action, and overall failed to take reasonable measures in "hiring, training, retaining and supervising."  (*Id.*)  Sheriff Rambosk argues that Count Twelve should be dismissed because: (1) Plaintiff did not allege facts sufficient to demonstrate that the employer was aware of the deputies' problems, (2) Plaintiff failed to show that the deputies' wrongful conduct was committed outside the scope of their employment, and (3) he is therefore entitled to sovereign immunity.  (Doc. 17 at 12–14).

"When a state or its subsidiary is sued in negligence, a court should first determine whether the circumstances alleged would subject a private person to liability under Florida law."  *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001) (citing *Kaisner v. Kolb*, 543 So. 2d 732, 734 (Fla. 1989)).  If a court is satisfied that a duty of care was owed to the plaintiff, the court must then

17

"determine whether the challenged actions are nonetheless acts which required the exercise of basic governmental discretion, as opposed to the implementation of an already established policy." *Id.*  In other words, "even if a plaintiff has adequately alleged all of the elements of a negligence claim, including the breach of a common law duty, immunity would still bar the claim if the challenged act were deemed to be governmentally 'discretionary' in nature, and not merely 'operational.'" *Id.* at 1262–63 (quoting *Kaisner*, 543 So. 2d at 737).  Under Florida law, a discretionary function is one in which "the governmental act in question involved an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning." *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1117–18 (11th Cir. 2005) (quoting *Henderson v. Bowden*, 737 So. 2d 532, 538 (Fla. 1999) (internal quotation marks omitted).  An operational function, conversely, is "one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented." *Id.* at 1118 (quoting *Henderson*, 737 So.2d at 538) (quotation marks omitted).

## A. Negligent Training

An employer is liable under Florida tort law "for reasonably foreseeable damages resulting from the negligent training of its employees." *Lewis*, 260 F.3d at 1265 (citing *McFarland & Son., Inc. v. Basel*, 727 So. 2d 266 (Fla. 5th DCA 1999)). Here, the Complaint alleges that Sheriff Rambosk was required to properly and adequately train the deputies.  (Doc. 1 at ¶ 163).  It also states that Sheriff

Rambosk should have known that the Deputies were "not fit for employment as law enforcement officers" (*id.* at ¶ 165) and that he placed the Deputies "in a position where they could inflict foreseeable harm" (*id.* at ¶ 166). It then states that Sheriff Rambosk "failed to take reasonable measures in . . . training . . . its employee defendants" (*id.* at ¶ 168) and that, as a direct and proximate result of this conduct, Plaintiff sustained damages (*id.* at ¶ 169). Taking Ms. Chingarev's allegations as true and viewing them in the light most favorable to her, Sheriff Rambosk owed her a duty, which he breached, and the breach caused her damages. Accordingly, Sheriff Rambosk's alleged conduct would subject a private citizen to liability for negligence under Florida law. *See Lewis*, 260 F.3d at 1262–63.

Claims for negligent training are usually barred by sovereign immunity because a "decision regarding how to train . . . officers and what subject matter to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning." *Id. at* 1266. And the Eleventh Circuit has previously affirmed dismissal of negligent training claims. *See Cook*, 402 F.3d at 1118 n.10 ("[E]ven if the district court *had* abused its discretion . . . such an error would in no way affect [the] negligent training and supervision claim, since sovereign immunity is a legal limitation that no amount of relevant evidence can overcome.") (emphasis in original). But whereas the determination of the content of a training program is a discretionary function, the Eleventh Circuit has suggested that the way in which a training program is implemented is operational. *See Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005) ("Because

[plaintiff] only challenges the content of the program, not the way in which the program was implemented, [the city] is entitled to sovereign immunity.").

Here, the Complaint is too vague to tell whether Plaintiff is challenging the content of the training program, the implementation of the program, or both. Accordingly, the Court will dismiss this part of the claim without prejudice, subject to Plaintiff properly reasserting this claim in any amended complaint.

## B. Negligent Supervision

As previously noted, the Eleventh Circuit has previously affirmed a dismissal of a negligent supervision claim, which was brought in conjunction with a negligent training claim. *See Cook*, 402 F.3d at 1118 n.10. It is unclear what facts the negligent supervision claim relies on and whether such negligent supervision was due to the absence of what Plaintiff would deem an appropriate policy or the improper implementation of an existing policy.

While Plaintiff may be able to set forth a negligent supervision claim, the claims in the Complaint are too vague to know what exactly Plaintiff is challenging with respect to supervision. Accordingly, the Court will dismiss the negligent supervision claim without prejudice to Plaintiff properly reasserting the claim in any amended complaint.

## C. Negligent Hiring and Retention

Florida courts have recognized "a duty to exercise reasonable care in hiring and retaining safe and competent employees." *Aspen American Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1270 (11th Cir. 2023) (quoting *Garcia v. Duffy*, 492 So.

2d 435, 439 (Fla. 2d DCA 1986)) (internal quotation marks omitted).  The "ultimate question of liability . . . is whether it was reasonable for the employer to permit the employee to perform his job in the light of information about him which the employer should have known."  *Id.* at 1269–70 (quoting *Tallahassee Furniture Co. v. Harrison*, 583 So. 2d 744, 751 (Fla. 1st DCA 1991)) (internal quotation marks omitted).  Here, the Complaint alleged that Sheriff Rambosk "knew, or should have known, that the individual CCSO defendants were not fit for employment as law enforcement officers" and that he placed the deputies "in a position where they could inflict foreseeable harm."  (Doc. 1 at ¶¶ 165–66).  The Complaint alleges that Sheriff Rambosk "knew or should have known of [the deputies'] propensity for violating" constitutional rights and Florida law.  (*Id.* at ¶ 167).  The Complaint further alleges that Sheriff Rambosk "failed to take reasonable measures in hiring [and] retaining . . . its employee defendants" and that Plaintiff sustained damages as a direct and proximate result of this conduct.  (*Id.* at ¶¶ 168–69).  Accepting Ms. Chingarev's allegations as true and viewing them in the light most favorable to her, Sheriff Rambosk owed her a duty, which he breached, and the breach caused her damages.  Accordingly, Sheriff Rambosk's alleged conduct would subject a private citizen to liability for negligence under Florida law.

Negligent hiring and retention claims are not always barred by sovereign immunity because these functions are sometimes deemed operational.  *See, e.g., Willis v. Dade Cnty. Sch. Bd.*, 411 So. 2d 245, 246 (Fla. 3d DCA 1982) ("[T]he trial court erred in dismissing with prejudice . . . on the sole ground that the doctrine of

sovereign immunity bars a cause of action against the school board for the negligent hiring or retention of [a] teacher. . . . Though the creation of a teaching position is a planning function, the actual filling of that position is operational"); *Slonin v. City of West Palm Beach, Fla.*, 896 So. 2d 882, 884 (Fla. 4th DCA 2005) ("[T]here is no sovereign immunity barrier to making a claim against a governmental agency for negligent retention or supervision"); *Vaden v. Campbell*, No. 4:09cv12-RH/WCS, 2009 WL 1919474, at **1, 4 (N.D. Fla. July 2, 2009) (where complaint alleged that a deputy coerced plaintiff into having sex with her and set forth negligent supervision and retention claims, court found that "[d]etermining whether reasonable care would have led the Sheriff to remove the deputy from his position in the work program in order to protect [plaintiff] and other participants from sexual abuse will not entangle the court in fundamental questions of policy and planning" and thus ruled that sovereign immunity did not apply to the claim).  The Court will require facts that can only be sought in discovery to determine whether the negligent hiring and retention in this matter was discretionary or operational.  Accordingly, the Court will not dismiss this claim because of sovereign immunity but will allow Sheriff Rambosk to set forth arguments about sovereign immunity, if appropriate, at the summary judgment stage.

Although the Court has determined that the negligent hiring and retention claim should not be dismissed, that claim was brought in the same count as the negligent training and supervision claim.  Because Plaintiff lumped these claims into one count and some of the claims within the count are due to be dismissed,

solely for purposes of clarity, the Court will dismiss Count Twelve in its entirety

without prejudice.  Should Plaintiff wish to pursue negligent training, supervision,

hiring, or retention claims in an amended complaint, the Court requires that she

split these claims into separate counts and address what facts and arguments

correspond to each claim in order to allow Defendant to respond to each specific

allegation and to prevent further procedural issues.

X.   _Whether the intentional infliction of emotional distress claim should be_
      _dismissed for failure to state a claim._

Count Thirteen sounds in intentional infliction of emotional distress against

Deputy Sudano.  (Doc. 1 at ¶¶ 171–77).  Deputy Sudano avers that Plaintiff has not

stated a claim for intentional infliction of emotional distress.  (Doc. 16 at 14–15).  To

state a claim under Florida law for intentional infliction of emotional distress, "a

plaintiff must demonstrate '(1) intentional or reckless conduct (2) that is outrageous

in that it is beyond all bounds of decency and utterly intolerable in a civilized

community (3) and that causes the victim emotional distress (4) that is severe.'"

_Hammer v. Sorensen_, 824 F. App'x 689, 694 (11th Cir. 2020) (quoting _Kim v. Jung_

_Hyun Chang_, 249 So. 3d 1300, 1305 (Fla. 2d DCA 2018)).  Under the outrageousness

element, it is not enough "that the defendant has acted with an intent which is

tortious or even criminal, or that he has intended to inflict emotional distress, or

even that his conduct has been characterized by malice or a degree of aggravation

which would entitle the plaintiff to punitive damages for another tort."  _Id._ (quoting

_Williams v. City of Minneola_, 575 So. 2d 683, 691 (Fla. 5th DCA 1991)) (internal

quotation marks omitted).  "Whether conduct is sufficiently outrageous to rise to the

level of intentional infliction of emotional distress is a question of law." *Haberski v. Bufano*, 728 F. App'x 903, 909 (11th Cir. 2018) (citing *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 595 (Fla. 2d DCA 2007)).  A plaintiff alleging intentional infliction of emotional distress "faces an exceedingly high burden, one that 'Florida courts have repeatedly found a wide spectrum of behavior' not to satisfy." *Scopelliti v. McClean*, No. 8:20-cv-104-CEH-CPT, 2022 WL 3209495, at *9 (M.D. Fla. July 11, 2022), *affirmed by* 2023 WL 1071626 (quoting *Von Alt-Byoune v. Von Alt*, No. 19-14117-CIV-ROSENBERG/MAYNARD, 2019 WL 5291046, at *2 (S.D. Fla. June 28, 2019)).

The Complaint alleges that Deputy Sudano's conduct was "extreme, outrageous and exceeded the bounds of conduct tolerated in a free, civilized society such that no reasonable person, including Plaintiff, should be expected to tolerate it." (Doc. 1 at ¶ 172).  The Complaint further alleges that Deputy Sudano's conduct "was intended to cause Plaintiff extreme emotional distress, humiliation, and fear," but was also inappropriate considering Plaintiff's age.  (*Id.* at ¶¶ 173–74).  Plaintiff further alleges that the distress experienced from this incident and her subsequent house arrest caused Plaintiff to develop "anxiety, depression, insomnia" and to become isolated from her friends and family.  (*Id.* at ¶ 176).

Accepting the allegations in the Complaint as true, the Court finds that an officer who has a position of power over Plaintiff (a sixteen year old child) and strikes the child on the back, pushes her, stomps on her bare feet, places a knee on her back, and makes her stand on hot asphalt in her bare feet, in response to a

24

noise complaint is sufficiently outrageous to survive a motion to dismiss.  (*Id.* at ¶¶ 15, 21–26); *see also Dependable Life Ins. Co. v. Harris*, 510 So. 2d 985, 988 n.7 (Fla. 5th DCA 1987) ("The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position . . . which gives him actual or apparent authority over the other . . . . In particular police officers, school authorities, landlords, and collecting creditors have been held liable for extreme abuse of their position.") (quoting Restatement (Second) of Torts, § 46, at 74 (1965)) (quotation marks omitted).[2]

*-Remainder of page intentionally left blank-*

---

[2] The Court strongly recommends that counsel for the parties confer and discern whether a settlement is plausible, especially before another complaint is filed and costly discovery expenses may be incurred.  Should the parties engage in good-faith settlement negotiations, the Court would be inclined to grant a joint motion requesting the Court to stay all deadlines while such negotiations are taking place.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

1) Defendants Sudano and Gambino's Motion to Dismiss (Doc. 16) is **GRANTED in part and DENIED in part**.

2) Defendant Rambosk's Motion to Dismiss (Doc. 17) is **GRANTED in part and DENIED in part**.

3) Count Six is **DISMISSED without prejudice** as to Sheriff Rambosk in his official capacity.

4) Count Ten is **DISMISSED without prejudice**.

5) Count Twelve is **DISMISSED without prejudice**.

6) Plaintiff is **DIRECTED** to file an amended complaint no later than October 13, 2023.

7) Should Plaintiff wish to pursue negligent training, supervision, hiring, or retention claims in an amended complaint, the Court requires that she split these claims into separate counts and address what facts and arguments correspond to each claim in order to allow Defendant to respond to each specific allegation.

**ORDERED** at Fort Myers, Florida on September 20, 2023.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE