UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MEDA CHINGAREV,

        Plaintiff,

v.                                   Case No:  2:22-cv-494-JLB-NPM

KEVIN RAMBOSK, BRIAN
SUDANO, and LAURA
GAMBINO,

        Defendants.

_____/

## ORDER

    Plaintiff Meda Chingarev ("Plaintiff" or "Ms. Chingarev") sues Defendants

Kevin Rambosk, Brian Sudano, and Laura Gambino ("Defendants") under 42 U.S.C.

§ 1983 alleging, *among other things*, false arrest, malicious prosecution, and

excessive force.  (Doc. 40).  Defendants filed a motion to dismiss Plaintiff's amended

complaint.  (Doc. 41).  Plaintiff responded.  (Doc. 43).  Upon careful review, the

motion to dismiss (Doc. 41) is **GRANTED in part**.  The Court dismisses Counts Six

and Seven with prejudice and Count Eleven without prejudice.

# BACKGROUND[1]

On June 8, 2020, at approximately 1:15 p.m., Ms. Chingarev, a then sixteen-year-old female, was inside her residence in Naples, Florida. (Doc. 40 at ¶¶ 9, 12). Defendant Deputies Brian Sudano and Laura Gambino came to Ms. Chingarev's residence and knocked on the door, advising her of a noise complaint. (*Id.* at ¶ 15). Ms. Chingarev and her mother, Jurgita Chingarev ("Ms. Chingarev's mother"), informed Deputies Sudano and Gambino of an ongoing noise complaint dispute with their neighbors. (*Id.* at ¶ 16). Ms. Chingarev's mother identified herself to Deputy Gambino. (*Id.* at ¶ 17). Deputy Sudano asked for identification in order to write up the noise complaint, but Ms. Chingarev's mother stated that she did not have any more time to talk to the deputies and turned to walk back into the house. (*Id.* at ¶¶ 18–19).

Deputy Sudano then stated that there was a warrant out for Ms. Chingarev's arrest, which Ms. Chingarev alleges was not true, and directed her to put her hands behind her back. (*Id.* at ¶ 20). Ms. Chingarev began to question the officers as to why she was being arrested, but Deputy Sudano offered no explanation and simply stated, "[t]urn around," before physically striking Ms. Chingarev on her back. (*Id.* at ¶ 21). Deputy Sudano then grabbed Ms. Chingarev by her hair and forcefully pushed her, causing a heavy object to damage Ms. Chingarev's right foot. (*Id.* at

---

[1] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citation omitted). Accordingly, this background section relies on the facts recited in the amended Complaint. (*See* Doc. 40).

2

¶ 22).  Deputy Sudano then stomped on Ms. Chingarev's bare feet, and once she had fallen to the floor, kneeled on her back while putting on her handcuffs and forcefully removed her cell phone from her hand so she could not further record his actions. (*Id.* at ¶ 23).  Ms. Chingarev verbally pleaded with Defendant Sudano to explain what she was being arrested for and contends that at no point did she strike, kick, resist, or become violent with Deputy Sudano or Deputy Gambino.  (*Id.* at ¶ 24).

After she was detained, Ms. Chingarev was forced to stand on hot asphalt in her bare feet and was then kept in a vehicle with no air conditioning before being transported to the Naples Juvenile Justice Center.  (*Id.* at ¶ 26).  Ms. Chingarev informed the deputies and certain medical personnel in jail that she was experiencing foot pain, but neither examined her foot.  (*Id.* at ¶ 28).  Ms. Chingarev alleges she was wrongfully incarcerated for approximately six hours.  (*Id.* at ¶ 30). The next day, on June 9, 2020, she was placed on twenty-one days' house arrest.[2] (*Id.*).

On January 4, 2021, Ms. Chingarev was found not guilty of battery on a law enforcement officer, not guilty of resisting an officer with violence, but was found guilty of obstruction.  (*Id.* at ¶ 31).  Ms. Chingarev was placed on formal probation for 24 hours post-trial.  (*Id.* at ¶ 32).

On August 15, 2022, Ms. Chingarev filed her Complaint.  (Doc. 1).  Defendant Deputies Gambino and Sudano filed their motion to dismiss on October 27, 2022.

---

[2] It is unclear from Plaintiff's amended complaint the reason why she was placed on house arrest for 21 days following her arrest.  (Doc. 40).

(Doc. 16).  On that same date, Defendant Sheriff Rambosk filed his motion to dismiss.  (Doc. 17).  The Court then granted in part and denied in part Defendants Sudano and Gambino's Motion to Dismiss (Doc. 16) and Defendant Rombosk's Motion to Dismiss (Doc. 17).  (Doc. 38).  The Court directed Plaintiff to file an amended complaint no later than October 10, 2023.  (*Id.*).

Ms. Chingarev timely filed her amended complaint.  (Doc. 40).  Defendants Rambosk, Sudano and Gambino filed a Motion to Dismiss Plaintiff's amended complaint.  (Doc. 41).

## MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted.  To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  This plausibility standard is met when the plaintiff pleads enough factual content "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

When reviewing a motion to dismiss, courts must accept all factual allegations in a complaint as true.  *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).  Legal conclusions, however, "are not entitled to the assumption of truth."  *Ashcroft*, 556 U.S. at 679.  "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."  *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

Title 42 U.S.C. § 1983 imposes liability on persons who, under color of state law, deprive a person "of any rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983. Therefore, to state a claim under section 1983, a plaintiff must allege that: (1) a defendant deprived him of a right secured under the Constitution or federal law; and (2) such deprivation occurred under color of state law. *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998). Additionally, where a plaintiff seeks to impose liability on one who is not an active participant in the alleged constitutional deprivation, that plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. *Williams v. Bennett*, 689 F.2d 1370, 1380–81 (11th Cir. 1982).

## DISCUSSION

Defendants argue that Plaintiff has failed to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (Doc. 41). Specifically, Defendants argue that (1) some of Plaintiff's claims are barred because probable cause existed for her arrest, (2) Defendant Rambosk should be dismissed in his individual capacity because no claims are asserted against him, (3) Defendants Sudano and Gambino are otherwise entitled to qualified immunity, and (4) Plaintiff has not properly pleaded a negligent supervision and training claim. (*Id.*). Upon review of Plaintiffs' amended complaint, the parties' briefing, and the entire record, the Court grants Defendants' motion in part. Counts Six and Seven are due to be

dismissed **with prejudice**.  Count Eleven is due to be dismissed **without prejudice**.

## I.   Whether certain claims must be dismissed because Plaintiff was found guilty of obstruction.

Defendants first argue that Counts One (First Amendment retaliation), Two (false arrest and imprisonment under Florida state law), Three (false arrest and imprisonment under 42 U.S.C. § 1983), Six (malicious prosecution under Florida state law), and Seven (malicious prosecution under Section 1983) are barred because Plaintiff was convicted of obstruction of an officer.  (Doc. 41 at 3–9).  The Court will address each argument in turn.

### A.  Counts Three and Seven under Section 1983.

Plaintiff alleges under section 1983 that she was falsely arrested and imprisoned (Count Three) and maliciously prosecuted (Count Seven).  (Doc. 40 at 13–14, 17–18).  Defendant argues that Plaintiff is barred from bringing these claims under *Heck v. Humphrey*, 512 U.S. 477 (1994).  (Doc. 41 at 3–9).  The Court finds that Plaintiff can proceed on Count Three, but Count Seven is due to be dismissed with prejudice.

In *Heck v. Humphrey*, the Supreme Court held that "to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal

court's issuance of a writ of habeas corpus[.]" *Heck*, 512 U.S. at 486–87. If "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," the district court must dismiss the claim unless the conviction or sentence has already been invalidated. *Id.* at 487. If, however, Plaintiff's cause of action would "*not* demonstrate the invalidity of any outstanding criminal judgment," then the claim may proceed—unless there's "some other bar to the suit." *Id.* (emphasis in original).

Here, Plaintiff asserts that Defendants "unlawfully arrested and detained [her] without a valid warrant or probable cause." (Doc. 40 at ¶ 2). She states that she was "maliciously prosecuted for Battery on a [law enforcement officer], Resisting an Officer with Violence and Obstruction of an Officer." (*Id.*). Stated simply, Plaintiff argues that she was falsely arrested, imprisoned, and maliciously prosecuted. She claims she is entitled to challenge her arrest, imprisonment, and prosecution under section 1983 because *Heck v. Humphrey* does not apply where a plaintiff (1) is not currently in custody and (2) is incarcerated too short a period of time to pursue habeas corpus relief effectively. (Doc. 43 at 6).

Notably, the Eleventh Circuit has not squarely decided whether *Heck* applies to bar a plaintiff's section 1983 claim where a plaintiff is no longer incarcerated or where a plaintiff was incarcerated only for a brief period and could not bring a habeas action:

> "A circuit split has developed regarding the application of *Heck* to situations where a claimant, who may no longer bring a habeas action, asserts a § 1983 complaint attacking a sentence or conviction." *Domotor v. Wennet*, 630 F. Supp. 2d 1368, 1376–77 (S.D. Fla. 2009) (collecting

7

cases).  This circuit has not definitively answered the question.  *See Abusaid v. Hillsborough Cnty. Bd. of Cnty. Com'rs*, 405 F.3d 1298, 1316 n.9 (11th Cir. 2005) (discussing "the [open] question of whether *Heck* bars § 1983 suits by plaintiffs who are not in custody," and noting "[o]ur court has not yet weighed in on this issue").  There are cases from this circuit that have suggested that *Heck* never applies to such a suit, *see Harden v. Pataki*, 320 F.3d 1289, 1298 (11th Cir. 2003), while others suggest *Heck* would almost always apply, *see Vickers v. Donahue*, 137 F. App'x 285, 289–90 (11th Cir. 2005) (per curiam) (unpublished).  Still other cases have suggested a middle ground—that application of *Heck* turns on whether the plaintiff had a meaningful opportunity to file for habeas relief while incarcerated.  *See Morrow v. Fed. Bureau of Prisons*, 610 F.3d 1271, 1272 (11th Cir. 2010) ("This case is one in which the alleged length of unlawful imprisonment–10 days–is obviously a duration that a petition for habeas relief could not have been filed and granted while Plaintiff was unlawfully in custody."); *see also id.* at 1273–74 (Anderson, J., concurring).

*Topa v. Melendez*, 739 F. App'x 516, 519 n.2 (11th Cir. 2018).

While the Eleventh Circuit has not resolved this issue, the Court finds that Plaintiff nonetheless may proceed on Count Three because—based on the current facts alleged—the challenge of her arrest does not imply the invalidity of her conviction.  The Eleventh Circuit considered a similar case in *Hughes v. Lott,* 350 F.3d 1157 (11th Cir. 2003).  There, the plaintiff alleged that police officers violated his Fourth Amendment rights by stopping, searching, and arresting him without reasonable suspicion, probable cause, or a warrant.  *Id.* at 1159.  Following the arrest, Plaintiff was ultimately convicted of second-degree burglary and receipt of stolen property.  *Id.*  Plaintiff then sued for false arrest and illegal search, arguing that the underlying arrest was illegal.  *Id.*  The district court dismissed the plaintiff's complaint, holding that the plaintiff's illegal arrest claim would undermine his burglary conviction and, therefore, his claim was barred by *Heck v.*

*Humphrey*. *Id.*  On appeal, the Eleventh Circuit held that "[b]ecause an illegal search or arrest may be followed by a valid conviction . . .  a successful § 1983 action for Fourth Amendment . . . does not necessarily imply the invalidity of a conviction." *Id.* at 1160 (citing *Heck*, 512 U.S. at 487 n.7).  The Eleventh Circuit held that *Heck* does not bar section 1983 claims even where the underlying arrest led to a conviction.  *Id.*; *see also Henley v. Payne*, 945 F.3d 1320, 1329 (11th Cir. 2019) (recognizing that the plaintiff's false arrest for trespassing did not necessarily negate his convictions for harassing phone calls and marijuana possession); *see also Beck v. City of Muskogee Police Dep't,* 195 F.3d 553, 558 (10th Cir.1999) (concluding that plaintiff's claims for illegal arrest and illegal search and seizure may go forward despite conviction); *see also Copus v. City of Edgerton,* 151 F.3d 646, 648 (7th Cir. 1998) (holding that "it is possible for an individual to be properly convicted though he is unlawfully arrested"); *see also Simpson v. Rowan,* 73 F.3d 134, 136 (7th Cir. 1996) ("Because an illegal search or arrest may be followed by a valid conviction, a conviction generally need not be set aside in order for a plaintiff to pursue a § 1983 claim under the Fourth Amendment.").  Like *Hughes*, the Court here similarly finds that an illegal arrest may be followed by a valid conviction.  To be clear, the Court is not finding that Plaintiff was illegally arrested because such assertion would be premature at this stage of the proceedings.  The Court merely acknowledges that accepting all facts as true at this early stage of litigation and under Eleventh Circuit precedent and persuasive authority from other circuits, Plaintiff may continue with Count Three—her claim for false arrest and

imprisonment under section 1983.  Accordingly, Defendants' motion to dismiss Count Three is denied.

Moreover, Plaintiff's section 1983 malicious prosecution claim (Count Seven) also implicates the Supreme Court's decision in *Heck v. Humphrey*.  As the Court stated above, false arrest claims *do not* necessarily implicate *Heck*.  *See e.g., Henley v. Payne*, 945 F.3d 1320, 1329 (11th Cir. 2019) (recognizing that the plaintiff's false arrest for trespassing did not necessarily negate his convictions for harassing phone calls and marijuana possession).  However, malicious prosecution claims *do* implicate *Heck*.

To state a malicious prosecution claim, Plaintiff must allege the elements of the common law tort of malicious prosecution and that the Defendants' actions resulted in a "violation of her Fourth Amendment right to be free of unreasonable seizures."  *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019).  The common law elements of malicious prosecution are: (1) the proceeding was instituted without any probable cause; (2) the motive in instituting the suit was "for a purpose other than bringing the defendant to justice"; and (3) the prosecution "terminated in the acquittal or discharge of the accused."  *Thompson v. Clark*, 142 S. Ct. 1332, 1338 (2022).

Here, Plaintiff has not shown that her Obstruction conviction has been invalidated—i.e. the conviction has not been reversed on direct appeal, expunged by executive order, declared invalid by a state court, or by a federal court's issue of habeas corpus—and Plaintiff does not assert otherwise.  *See Heck*, 512 U.S. at 486–

10

87 (to pursue a section 1983 claim for an unconstitutional imprisonment, plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus); *see also id.* at 489–90 ("Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." (internal citations omitted)); *see also McDonough v. Smith*, 588 U.S. 109, 117-18 (2019) ("McDonough could not bring his fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution. . . . Because a civil claim such as McDonough's, asserting that fabricated evidence was used to pursue a criminal judgment, implicates the same concerns, it makes sense to adopt the same rule [as the one we enunciated in Heck]." (internal citations omitted)).  Thus, Count Seven is barred by *Heck*.  Even if *Heck* did not bar Count Seven, it would still be subject to dismissal for failure to state a claim because Plaintiff has not pled that the prosecution "terminated in the acquittal or discharge of the accused."  *See Thompson*, 142 S. Ct. at 1338.  Accordingly, Plaintiff's malicious prosecution claim under section 1983 (Count Seven) is subject to dismissal with prejudice as barred by *Heck* and for failure to state a claim upon which relief may be granted.  Defendants' motion to dismiss Count Seven is granted.

**B. Counts Two and Six under Florida State Law.**

Next, Plaintiff asserts Florida state law claims for false arrest and imprisonment (Count Two) and malicious prosecution (Count Six). (Doc. 40 at 12–13, 16–17). Defendant argues that probable cause existed for Plaintiff's arrest which bars these claims as a matter of law. (Doc. 41 at 3–9). The Court finds that Plaintiff has adequately pleaded Count Two, but Count Six is due to be dismissed with prejudice.

Under Florida state law[3], a malicious prosecution action requires a plaintiff to plead the following six elements: "(1) a criminal or civil judicial proceeding was commenced against the plaintiff; (2) the proceeding was instigated by the defendant in the malicious prosecution action; (3) the proceeding ended in the plaintiff's favor; (4) the proceeding was instigated with malice; (5) the defendant lacked probable cause; and (6) the plaintiff was damaged." *Miami-Dade Cnty. v. Asad*, 78 So. 3d 660, 664 (Fla. 3d DCA 2012); *Kalt v. Dollar Rent–A–Car,* 422 So. 2d 1031, 1032 (Fla. 3d DCA 1982); *see also Adams v. Whitfield,* 290 So. 2d 49, 51 (Fla. 1974). "The absence of any *one* of these elements will defeat malicious prosecution action." *Kalt,* 422 So. 2d at 1032 (emphasis added). Moreover, false arrest "is the unlawful restraint of a person against that person's will." *Willingham v. City of Orlando,* 929 So. 2d 43, 48 (Fla. 5th DCA 2006).

---

[3] Where the Court exercises supplemental jurisdiction over state law claims, "state law governs substantive issues and federal law governs procedural issues." *McDowell v. Brown*, 392 F.3d 1283, 1294 (11th Cir. 2004) (citation omitted).

The existence of probable cause is crucial to both false arrest and malicious prosecution.  "Probable cause" is defined as "a reasonable ground of suspicion supported by circumstances strong enough in themselves to warrant a cautious person in belief that the named suspect is guilty of the offense charged." *Johnson v. State,* 660 So. 2d 648, 654 (Fla. 1995).  "In a malicious prosecution case, the plaintiff must establish an absence of probable cause as an element of the tort; in a false arrest case, the existence of probable cause is an affirmative defense." *Daniel v. Vill. of Royal Palm Beach*, 889 So. 2d 988, 990 (Fla. 4th DCA 2004).

A judgment of conviction is "conclusive evidence of probable cause, unless the judgment was obtained by fraud, perjury, or other corrupt means." *Behm v. Campbell*, 925 So. 2d 1070, 1072 (Fla. 5th DCA 2006) (citations omitted).  Even where a conviction may be subsequently reversed, a conviction is sufficient determination of probable cause unless fraud, prejudice, or other corrupt means exist. *Carter v. City of St. Petersburg,* 319 So. 2d 602, 604 (Fla. 2d DCA 1975).  "When the facts material to a probable cause determination are undisputed, the existence of probable cause is for the court to decide as a matter of law." *Alamo Rent–A–Car, Inc. v. Mancusi,* 632 So. 2d 1352, 1357 (Fla. 1994).

As to Count Two—Plaintiff's state law false arrest and imprisonment claim––the Court finds that Plaintiff has properly pleaded this claim.  Plaintiff states that Defendants "subjected Plaintiff to false arrest, false imprisonment, and deprivation of liberty without a valid warrant **or probable cause**." (Doc. 40 at ¶ 68) (emphasis added).  She contends that "Defendants Sudano and Gambino were the legal causes

of the original judicial proceeding by each falsely alleging to prosecutors and filing false police reports that [she] committed the crimes of Battery on a Law Enforcement Officer, Resisting an Officer with Violence and Obstruction [of] an Officer without Violence." (*Id.* at ¶ 116). These facts place into question whether probable cause existed for her arrest. Here, Plaintiff was convicted of Obstruction, which normally would bar Count Two under Florida state law because a conviction is a sufficient determination of probable cause. *Behm*, 925 So. 2d at 1072; *Carter*, 319 So. 2d at 604. However, a conviction is not conclusive evidence of probable cause if the conviction was due to fraud, prejudice, or any other corrupt means. *See Behm*, 925 So. 2d at 1072 (A conviction is "conclusive evidence of probable cause, *unless the judgment was obtained by fraud, perjury, or other corrupt means.*" (emphasis added)); *see also Carter,* 319 So. 2d at 604 ("in the absence of fraud, prejudice, or any other corrupt means, a conviction is of sufficient determination of the element of probable cause, even if it may be subsequently reversed"). Thus, Plaintiff's Count Two claim is not barred because she properly pleads that her arrest may have been induced by fraud, prejudice, or other corrupt means. She has pleaded that Defendants Sudano and Gambino—the officers involved in her arrest––filed false police reports and lied to prosecutors. (Doc. 40 at ¶ 116). Because she has alleged that her arrest and imprisonment may have been due to fraud, Plaintiff may proceed on Count Two. Accordingly, Defendant's motion to dismiss Count Two is denied.

As to Count Six—Plaintiff's malicious prosecution claim—the Court finds that this claim is due to be dismissed with prejudice.  As previously stated, the elements of a malicious prosecution claim are "(1) a criminal or civil judicial proceeding was commenced against the plaintiff; (2) the proceeding was instigated by the defendant in the malicious prosecution action; (3) *the proceeding ended in the plaintiff's favor*; (4) the proceeding was instigated with malice; (5) the defendant lacked probable cause; and (6) the plaintiff was damaged." *Asad*, 78 So. 3d at 664 (emphasis added).  Here, the Court finds that Plaintiff has not demonstrated that the proceeding ended in her favor, which is a required element of a malicious prosecution claim under Florida law.  *See id.* (holding that a plaintiff must show that the original judicial proceeding ended in the plaintiff's favor to properly plead a malicious prosecution action).  Notably, Plaintiff alleges she was prosecuted for "Battery on a Law Enforcement Officer, Resisting an Officer with Violence, and Obstruction [of] an Officer without violence." (Doc. 40 at ¶ 116).  She attempts to show that the proceeding ended in her favor because she was found not guilty of battery on a law enforcement officer and not guilty of resisting an officer with violence.  (*Id.* at ¶ 117).  However, because Plaintiff was found guilty of Obstructing an Officer without violence in the same proceeding where she was found not guilty on the other two counts, she cannot show that the proceeding ended in her favor.

The Florida Supreme Court addressed this issue in *Warriner v. Burdines, Inc.*, 93 So. 2d 108 (Fla. 1957).  There, the plaintiff sued for malicious prosecution of a grand larceny charge arguing that the defendants knew the charge was false.  *Id.*

at 109.  In the underlying criminal action, the plaintiff was charged with grand larceny and petit larceny for stealing a sweater, a skillet, a percolator and a cigarette lighter.  *Id.*  At trial, the plaintiff was found not guilty of grand larceny but was convicted of petit larceny.  *Id.*  The central issue in the civil case was whether the underlying criminal action "ended in the plaintiff's favor", a required element to prove malicious prosecution.  In essence, the issue was whether  plaintiff could bring a malicious prosecution action if she was found not guilty on the grand larceny charge while convicted of the petit larceny charge.  *Id.*  The Florida Supreme Court held that the plaintiff could not prevail on a malicious prosecution action because she had not shown that the proceeding ended in her favor.  *Id.* Specifically, the court found that the proceeding had terminated to her disadvantage because she was convicted of petit larceny in the same proceeding as her grand larceny charge.  *Id.*

Similar to the Florida Supreme Court's holding in *Warriner*, the Court finds that Plaintiff has not shown that the underlying criminal action proceeding ended or terminated in her favor.  Specifically, Plaintiff states that she was charged with battery on an officer, resisting an officer with violence, and obstruction of an officer without violence.  She attempts to bring a malicious prosecution action arguing that probable cause did not exist for the three charges.  But, the Florida Supreme Court has clearly articulated that Plaintiff cannot bring her malicious prosecution claim if she was convicted of obstruction of an officer in the same proceeding as the other claims.  *Warriner*, 93 So. 2d at 109.  Plaintiff has not shown otherwise.  Accordingly,

16

the Court finds that Count Six—Plaintiff's malicious prosecution claim—is due to be dismissed with prejudice.

### C. Count One under Section 1983.

Moreover, Plaintiff brings a section 1983 claim, contending that Defendants retaliated against her after she exercised her First Amendment rights.  (Doc. 40 at 11–12).  Defendant argues that probable cause existed for Plaintiff's arrest, which bars this claim as a matter of law.  (Doc. 41 at 6).  The Court finds that Plaintiff may proceed on Count One.

To state a section 1983 First Amendment retaliation claim, a plaintiff generally must show: "(1) she engaged in constitutionally protected speech, such as her right to petition the government for redress; (2) the defendant's retaliatory conduct adversely affected that protected speech and right to petition; and (3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech and right to petition." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019) (citation omitted).  In *Hartman v. Moore*, 547 U.S. 250 (2006), the Supreme Court addressed the test that applies when a citizen alleges that she was criminally prosecuted in retaliation for First Amendment activity.  There, the Supreme Court held that to establish a causal connection between retaliatory conduct and an adverse effect on a plaintiff's speech, "a plaintiff must plead and prove more than the subjective retaliatory animus of a government official and a plaintiff's subsequent injury; the plaintiff must also plead and prove the absence of probable cause for the underlying retaliatory criminal

prosecution." *Id.* at 260–61. In reaching this conclusion, the Supreme Court reasoned that absence of probable cause was needed to "bridge the gap between the nonprosecuting government agent's [the postal inspector] motive and the prosecutor's action, and to address the presumption of prosecutorial regularity." *Id.* at 263. The Supreme Court held as follows: "[b]ecause showing an absence of probable cause will have high probative force, and can be made mandatory with little or no added cost, it makes sense to require such a showing as an element of a plaintiff's case, and we hold that it must be pleaded and proven." *Id.* at 265–66; *see also Nieves v. Bartlett*, 587 U.S. 391 (2019) ("[b]ecause there was probable cause to arrest Bartlett, his retaliatory arrest claim fails as a matter of law").

Here, Plaintiff has adequately pleaded Count One. Defendants challenge Count One on the basis that probable cause existed for Plaintiff's arrest and Count One is therefore barred. (Doc. 41 at 6). Upon review of the amended complaint, specifically where Plaintiff alleges Count One (Doc. 40 at 11), she "re-alleges and re-avers Paragraphs 1–9, 11–16, 19–21 and 24 of this Complaint." (*Id.* at ¶ 58). In paragraph 2 of the amended complaint, Plaintiff states that Defendants "unlawfully arrested and detained Plaintiff without a valid warrant or probable cause." (*Id.* at ¶ 2). She further contends that the Judge in the underlying criminal action "found that the responding officers lacked probable cause and acted without merit in relation to the aforementioned arrest." (*Id.* at ¶ 3). This is sufficient to establish a First Amendment retaliation claim as Plaintiff has pleaded that probable cause did not exist for her arrest. *See Hartman*, 547 U.S. at 260–61 (a plaintiff must plead

the absence of probable cause to establish a First Amendment retaliation claim). Thus, Plaintiff may proceed on Count One, and Defendants' motion to dismiss as to Count One is denied.

## II. Whether Sheriff Rambosk should be dismissed in his individual capacity

The Court previously addressed that Plaintiff's original complaint asserted no claims against Sheriff Rambosk in his individual capacity and, therefore, there was nothing for the Court to dismiss. (Doc. 38 at 6). Upon review of Plaintiff's amended complaint, the same issue persists. Like her prior complaint, the amended complaint states that Defendant Rombosk "is being sued in his individual and official capacities." (Doc. 40 at ¶ 10). Again, Sheriff Rambosk here points out (Doc. 41 at 9–11) that none of the counts in the amended complaint are brought against him in his individual capacity. (*See* Doc. 40). Because of this, he argues he should be dismissed from the case in his individual capacity. (Doc. 41 at 9–11). Plaintiff doesn't dispute that she has not pleaded any counts against the Sheriff in his individual capacity. (Doc. 43 at 4–6). Instead, she argues that it is too early at this stage in the litigation to dismiss the Sheriff in his individual capacity because discovery has not commenced. (*Id.* at 4). In support of this argument, Plaintiff cites *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700 (11th Cir. 1985). In *Ancata*, the plaintiff[4] sued Robert Butterworth, in his official capacity as the sheriff of Broward County at the time of the incident forming the basis for the lawsuit, and George

---

[4] Plaintiff was the personal representative of the deceased, Anthony Ancata's, estate. *Id.* at 701.

19

Brescher, in his official capacity as Broward County Sheriff at the time the lawsuit was filed.[5]  *Id.* at 701.  Plaintiff accused both sheriffs of failing to provide adequate funding to take care of the medical needs of those incarcerated at the jail, which ultimately resulted in the death of Mr. Ancata.  *Id.* at 702.  Specifically, the plaintiff asserted claims against Sheriff Butterworth, alleging that he deprived Mr. Ancanta of his constitutional rights by failing to provide medical care to him.  *Id.* at 703.  The district court dismissed the claim against Sheriff Butterworth, stating that the claims against him were solely based on respondent superior, a claim which the court contended that the plaintiff could not prove.  *Id.* at 704–05.  However, on appeal, the Eleventh Circuit held that the dismissal of the case was premature because the plaintiff could prove that the sheriff was personally involved in the acts depriving Mr. Ancata of his constitutional rights or that he breached a duty causing Mr. Ancata's injury.  *Id.* at 706.  In short, the Eleventh Circuit held that "[a]t the stage in the litigation at which Sheriff Butterworth was dismissed, *i.e.,* prior to discovery, it is impossible to say whether Butterworth played a role in demanding the court orders as a condition of obtaining medical care."  *Id.*

Here, Plaintiff incorrectly interprets the Eleventh Circuit's opinion in *Ancata* to insinuate that she can sue Sheriff Rombosk in his individual capacity without actually asserting any claims against him.   In *Ancata*, the Eleventh Circuit merely held that the district court dismissed the plaintiff's claims too soon —*i.e.*, prior to

---

[5] The Plaintiff also asserted claims against Prison Health Services, Inc. (the entity responsible for providing medical care to those housed in the jail where the Mr. Ancata was incarcerated), its medical personnel, and Broward County.  *Id.*

discovery—because the plaintiff was not afforded an opportunity to show that Sheriff Butterworth violated Mr. Ancata's constitutional rights. This differs from the present case because, in *Ancata*, the plaintiff asserted constitutional claims against Sheriff Butterworth.

Here, Plaintiff did not assert any claims against Sheriff Rombosk in his individual capacity. Indeed, plaintiff attempts to proceed against Sheriff Rambosk, in his individual capacity without asserting claims against him. This is improper. *See Sledge v. Goodyear Dunlop Tires N. Am., Ltd.,* 275 F.3d 1014, 1018 n.8 (11th Cir. 2001) ("The failure of the plaintiff to identify his claims with sufficient clarity to enable the defendant to frame a [responsive] pleading constitutes shotgun pleading."); *see also Boatman v. Town of Oakland,* 76 F.3d 341, 343 n. 6 (11th Cir. 1996) (characterizing as a "'shotgun' pleading" a complaint that failed to place a defendant on notice of what the claim was and the grounds upon which it rested). Thus, Plaintiff cannot proceed against Sheriff Rombosk in his individual capacity because she has not asserted any claims against him. If, during discovery, Plaintiff identifies a claim against Sheriff Rombosk in his individual capacity, she may file a motion seeking leave of Court to file an amended complaint. *See* Fed. R. Civ. P. 15(a)(2).

### III.   Whether qualified immunity bars Plaintiff's claims

Defendants Sudano and Gambino next argue that Counts One (First Amendment retaliation), Two (false arrest and imprisonment) and Seven (malicious prosecution) are barred due to qualified immunity. (Doc. 41 at 11–16). The Court

finds that, at this stage in the litigation, Plaintiff may proceed on Counts One and Two.[6]

"Qualified immunity shields a government official from liability unless he violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Myrick v. Fulton Cnty., Ga.*, 69 F.4th 1277, 1297 (11th Cir. 2023) (citation and internal quotation marks omitted).  Qualified immunity balances two public interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Baker v. City of Madison, Ala.*, 67 F.4th 1268, 1278 (11th Cir. 2023) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)) (internal quotation marks omitted).

A "defendant asserting the qualified immunity defense bears the initial burden of showing that he or she was acting within his or her discretionary authority." *Myrick*, 69 F.4th at 1297 (citing *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 951 (11th Cir. 2019)); *see also Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (11th Cir. 2003) ("Under qualified immunity analysis, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly unconstitutional acts took place.").  Only after the defendant makes that showing does "the burden shift[] to the plaintiff to show that qualified immunity is not appropriate." *Myrick*, 69 F.4th at 1297 (citing *Lee v. Ferraro*, 284 F.3d 1188,

---

[6] As stated above, Plaintiff's malicious prosecution claim under section 1983 (Count Seven) is due to be dismissed with prejudice.

1194 (11th Cir. 2002)).  To determine whether a defendant acted within his or her discretionary authority, courts "assess whether they are of a type that fell within the employee's job responsibilities." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).  Courts ask "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Id.* at 1265–66.

Here, Defendants have met their initial burden of showing that they were acting within their discretionary authority.  Specifically, Defendants Sudano and Gambino were on-duty officers of the Collier County Sheriffs' Office, who were dispatched to Plaintiff's apartment to investigate a noise complaint.  (Doc. 40 at ¶¶ 11, 15; Doc. 41 at 15).  The Eleventh Circuit has held that officers conducting arrest and investigative functions are acting within their discretionary authority.  *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019) (holding that, because the defendant officers were conducting arrest and investigative functions, they were acting within their discretionary authority).  Thus, Defendants have established that they were acting under their discretionary authority by investigating a noise complaint.

Since the Defendants' initial burden has been met, the burden now falls on Plaintiff to show that qualified immunity is not appropriate.  Plaintiff asserts that a qualified immunity defense fails when there is a clear violation of established constitutional rights. The Court finds that Plaintiff has satisfied her burden to show that qualified immunity is not appropriate at this stage in the litigation.

To overcome a qualified immunity defense, a plaintiff must demonstrate first, that the defendant violated a constitutional right and second, that the violation was clearly established. *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007). "To survive a motion to dismiss based upon qualified immunity, the plaintiff must have alleged sufficient facts to support a finding of a constitutional violation of a clearly established law." *Chandler v. Sec'y of Fla. Dep't of Transp.,* 695 F.3d 1194, 1198–99 (11th Cir. 2012). A plaintiff alleging an arrest without probable cause requires at least minimal allegations regarding the factual circumstances of the arrest. *Grider v. City of Auburn, Ala.,* 618 F.3d 1240, 1257 (11th Cir. 2010) (observing that whether "arguable probable cause" shields law enforcement officers from false-arrest claims depends upon the *factual circumstances* of the arrest).

Accepting the facts in the amended complaint as true, both prongs of qualified immunity appear to be satisfied. Here, Plaintiff pleads that she was falsely arrested and retaliated against based on her First Amendment rights. (*See* Doc. 40). She alleges that probable cause did not exist for her arrest and that the Defendants filed false sworn statements in support of the arrest. (*Id.* at ¶¶ 34–36). Also, she states that the Judge in the underlying criminal action "found that the responding officers lacked probable cause and acted without merit in relation to the aforementioned arrest." (*Id.* at ¶ 3). These facts demonstrate that Plaintiff has pleaded that Defendants violated her constitutional rights and such rights were clearly established at the time of her arrest. Plaintiff has a Fourth Amendment right to be free from unreasonable arrests and such right was clearly established at

24

the time of Plaintiff's arrest.  *Pearson v. Callahan*, 555 U.S. 223 (2009) (holding that the Fourth Amendment right to be free from unreasonable searches and arrests is clearly established).  To be clear, the Court will not dismiss the amended complaint on qualified immunity grounds at this early stage of litigation.  That said, Defendants may again invoke qualified immunity at summary judgment if they so choose.  Accordingly, Defendants' motion to dismiss on qualified immunity grounds is denied.

## IV. Whether Plaintiff has properly pleaded negligent supervision and training

Lastly, Defendants argue that Plaintiff has not sufficiently pleaded her negligent supervision claim (Count Eleven) and her negligent training claim (Count Twelve).  (Doc. 41 at 16–20).  Plaintiff responds stating that she has properly pleaded negligent training and supervision.  (Doc. 43 at 12–15).  The Court finds that Plaintiff has properly pleaded Count Twelve but, Count Eleven is due to be dismissed without prejudice.

### A. Count Eleven—Negligent Supervision

The Florida Supreme Court recognized the tort of negligent supervision in 1954, holding that an employer cannot knowingly keep "a dangerous servant . . . which defendant knew or should have known was dangerous and incompetent. . . ." *Mallory v. O'Neil,* 69 So.2d 313, 315 (Fla.1954).  Adding to that, negligent supervision occurs when, during the employment, "the employer knows or should know of an employee's unfitness and fails to take further action such as 'investigating, discharge or reassignment.'" *Malicki v. Doe,* 814 So. 2d 347, 362 n.15

(Fla. 2002) (quoting *Garcia v. Duffy*, 492 So. 2d 435, 438–39 (Fla. 2d DCA 1986)).  A plaintiff states a claim for negligent supervision by alleging "(1) the existence of a relationship giving rise to a legal duty to supervise; (2) the negligent breach of that duty; and (3) that the negligence was the proximate cause of plaintiff's injury." *Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.*, 657 F. Supp. 2d 1279, 1291 (M.D. Fla. 2009) (citing *Collins v. Sch. Bd. of Broward Cnty.*, 471 So. 2d 560, 563 (Fla. 4th DCA 1985)).  To establish a breach, a plaintiff must allege "(1) the employer received actual or constructive notice of an employee's unfitness, and (2) the employer did not investigate or take corrective action such as discharge or reassignment." *See Doe v. Carnival Corp.*, 470 F. Supp. 3d 1317, 1324 (S.D. Fla. 2020) (citations and internal quotation marks omitted).

Here, Plaintiff points only to news articles reporting that the Collier County Sheriff's Office was sued for false arrest and excessive force, *inter alia*, on other occasions.  (Doc. 40 at ¶ 57).  Plaintiff attempts to use these news articles in support that she has adequately pleaded a claim for negligent supervision.  However, Plaintiff has not pleaded that Sheriff Rambosk had notice that either Defendant Sudano or Gambino had harmful propensities or were otherwise unfit to serve as police officers.  *See Willis v. Dade Cnty. Sch. Bd.*, 411 So. 2d 245, 246 n.1 (Fla. 3d DCA 1982) (holding that a plaintiff must allege facts showing that the employer was put on notice of the harmful propensities of the employee (citation omitted)); *see also Dep't of Envtl. Prot. v. Hardy*, 907 So. 2d 655, 660 (Fla. 5th DCA 2005) ("The plaintiff must allege facts sufficient to show that once an employer received actual

or constructive notice of problems with an employee's fitness, it was unreasonable for the employer not to investigate or take corrective action."). Further, Plaintiff has also not pleaded that Defendants' Sudano or Gambino's conduct was committed outside the scope of employment, which is required under Florida law. *Buckler v. Israel*, 680 Fed. Appx. 831, 834 (11th Cir. 2017) ("Under Florida law, a claim for negligent. . . supervision requires that an employee's wrongful conduct be committed outside the scope of employment.") (citing *Mallory v. O'Neil*, 69 So. 2d 313, 315 (Fla. 1954)). Thus, because Plaintiff has not shown that Sheriff Rambosk was put on notice of alleged harmful propensities of Defendants Sudano and Gambino and that the Defendants were not acting outside the scope of their employment, her negligent supervision claim (Count Eleven) is due to be dismissed without prejudice.

### B. Count Twelve—Negligent Training

Under Florida law, "an employer is liable in tort for reasonably foreseeable damages resulting from the negligent training of its employees and agents." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1265 (11th Cir. 2001) (citing *McFarland & Son., Inc. v. Basel*, 727 So. 2d 266 (Fla. 5th DCA 1999)). To plead a claim for negligent training, a plaintiff must plead they were in the zone of risk that was reasonably foreseeable to the employer in order to establish a duty running to plaintiff. *Spadaro v. City of Miramar,* 855 F.Supp.2d 1317, 1338 (S.D. Fla. 2012).

Here, the Court finds that Plaintiff's amended complaint raises a cause of action on Count Twelve—negligent training. In her amended complaint, Plaintiff

states Sheriff Rambosk "failed to adequately, sufficiently, and properly train, prepare and ready Sudano and Gambino to competently and satisfactorily handle their interaction with Plaintiff. . . ." (Doc. 40 at ¶ 163).  Further, she states that "[i]t was in the zone of foreseeability that Defendant Rambosk should have expected its officer to handle situations and interactions with subjects, suspects, and citizens in Collier County. . ." and Sheriff Rambosk failed to train for de-escalation techniques and a reasonable amount of force.  (*Id.* at 164).  In rebuttal, Defendants argue that there is "no common law or statutory duty of care to individuals for the activity of training. . . the Sheriff's employees or contractors."  (Doc. 41 at 19).  The Court disagrees with Defendants' assertion.  *See Johnson v. Cannon*, 947 F. Supp. 1567, 1571 (M.D. Fla. 1996) (allowing a negligent training claim to proceed where plaintiff alleges that the Sheriff failed to provide proper training to his deputies); *see also Swofford v. Eslinger*, 686 F. Supp. 2d 1277, 1290 (M.D. Fla. 2009) (finding that plaintiff's Florida state negligent training claim may proceed where plaintiff alleges negligence in the implementation or operation of a training program). Accordingly, Plaintiff may proceed on Count Twelve and Defendants' motion to dismiss Count Twelve is denied.

**CONCLUSION**

For the foregoing reasons, it is **ORDERED** that:

1) Defendants' Motion to Dismiss (Doc. 41) is **GRANTED in part and DENIED in part**.

2) Count Six is **DISMISSED with prejudice**.

3) Count Seven is **DISMISSED with prejudice**.

4) Count Eleven is **DISMISSED without prejudice**.

5) The Court gives Plaintiff leave to amend—should counsel choose to file an amended complaint—on Count Eleven.  Plaintiff may not assert any new claims if she chooses to file a third amended complaint. Should Plaintiff wish to file a third amended complaint, she must do so by October 1, 2024.

**ORDERED** in Fort Myers, Florida on September 16, 2024.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE