UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MEDA CHINGAREV,

    Plaintiff,

v.                                   Case No. 2:22-cv-494-KCD-NPM

KEVIN J. RAMBOSK, BRIAN
SUDANO, LAURA GAMBINO,

    Defendants,
_____/

## ORDER

This civil rights case was born from a noise complaint and a neighbor's quarrel, which escalated into a physical confrontation and the eventual arrest of a sixteen-year-old girl. Now before the Court is Defendants' Motion for Partial Summary Judgment. (Doc. 76.)[1] Plaintiff Meda Chingarev has conceded that summary judgment is appropriate as to Counts 2, 3, 8, 9, and 12. So only two contested claims remain: Count 1, alleging First Amendment Retaliation against Defendant Sergeant Brian Sudano; and Count 13, asserting a claim for Intentional Infliction of Emotional Distress ("IIED") against the same officer. For the reasons below, Sergeant Sudano is entitled to summary judgment on these remaining claims as well.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

## I. Background

These are the undisputed facts relevant here. On the afternoon of June 8, 2020, Sergeant Sudano and Corporal Laura Gambino responded to a call from a resident in Naples, Florida, who reported an ongoing dispute with her neighbor, Jurgita Chingarev. In the course of their initial investigation, the officers learned of a potential warrant for Jurgita's arrest. A search of the Sheriff's Office database confirmed an active capias warrant for stalking. (*See* Doc. 82 ¶¶ 1-7.)

Apparently seeking to address both the noise complaint and execute the warrant, the officers proceeded to the Chingarev residence. There, they were met by Jurgita and her daughter, Plaintiff Meda Chingarev. While the interaction began with an explanation of the noise complaint, the atmosphere shifted when Jurgita identified herself but refused to provide physical identification, stating she would no longer speak with the deputies. (*Id.* ¶¶ 8-12.)

At this juncture, Sergeant Sudano informed Jurgita of the warrant and directed her to submit to an arrest. What followed was a brief but tumultuous physical altercation. According to the officers, Plaintiff physically stepped between them and her mother, effectively obstructing the arrest. This version of events was later scrutinized in a state court bench trial, where a judge—after reviewing cell phone recordings and hearing testimony—concluded that

Plaintiff had indeed "stepped in front of the officer" to interfere with the lawful arrest of her mother. (Doc. 75-3 at 114:18-115:4.) Consequently, the state court found Plaintiff guilty of resisting an officer without violence. (*Id.*)

Plaintiff's account of the ensuing struggle portrays an aggressive use of force. She alleges that when she questioned the basis for the arrest, Sergeant Sudano offered no explanation but instead struck her in the back. She further claims the officer grabbed her by the hair, stomped on her bare feet, and, once she was on the ground, kneeled on her back with excessive force. During this struggle, Sergeant Sudano allegedly removed a cell phone from Plaintiff's hand to prevent further recording. (Doc. 86 at 4-7.)

The encounter culminated in the arrest of both mother and daughter. While Plaintiff was initially charged with battery and resisting an officer with violence, she was ultimately acquitted of these more serious charges, leaving only a conviction for obstruction without violence. (*See* Doc. 75-2, Doc. 75-3 at 115:2-4.) It is against this backdrop of a lawful warrant met with physical resistance that we must evaluate the remaining claims.

## II. Standard of Review

Granting summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is considered "genuine" only if "a reasonable jury could return a verdict for the

3

non[-]moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005).

"The moving party bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the [record], which it believes demonstrate the absence of a genuine issue of material fact." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the movant can show that no evidence supports the non-moving party's case, "[t]he burden then shifts to the non-moving party, who must go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

In deciding whether a genuine dispute of material fact exists, "courts should view the evidence and all factual inferences therefrom in the light most favorable to the [opposing] party." *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999). "If the record presents disputed issues of fact, the court may not decide them; rather, [it] must deny the motion and proceed to trial." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012). Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. Discussion

### Count I—First Amendment Retaliation

Plaintiff's first claim brings us to the intersection of the First Amendment's protection of speech and the Fourth Amendment's regulation of police conduct. She contends that Sergeant Sudano's decision to arrest her was not a response to her physical actions, but a calculated reprisal for her questioning his authority. (Doc. 82 at 11-12.) While the right to criticize the police is "one of the principal characteristics by which we distinguish a free nation from a police state," *City of Houston, Tex. v. Hill*, 482 U.S. 451, 463 (1987), that right does not grant a license to obstruct officers in the performance of their duties.

To prevail on a First Amendment retaliation claim, a plaintiff must typically prove that her speech "was a motivating factor behind the alleged retaliatory misconduct." *Eisenberg v. City of Miami Beach*, 1 F. Supp. 3d 1327, 1344 (S.D. Fla. 2014); *see also Brannon v. Finkelstein*, 754 F.3d 1269, 1275 (11th Cir. 2014). But when the adverse action is a criminal arrest, as claimed here,[2] the inquiry is more exacting.

---

[2] As best the Court can tell, Plaintiff's retaliation claim is based on her arrest. (*See* Doc. 82 at 13 ("In sum, [Plaintiff] sufficiently established that Defendant Sudano arrested her in

5

The Supreme Court recently clarified the boundaries of such claims in *Nieves v. Bartlett*, 587 U.S. 391 (2019). There, the Court held that "[t]he presence of probable cause should generally defeat a First Amendment retaliatory arrest claim." *Id.* at 405. This rule provides a clearer standard that accounts for the complexity of proving causation in the often-tense environment of an arrest. *Id.* at 401-03. So the plaintiff pressing a retaliatory arrest claim must "plead and prove an absence of probable cause as to the challenged retaliatory arrest or prosecution." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019).

Under the facts here, the question of probable cause is not an open one. Plaintiff was tried in a Florida court and found guilty of resisting an officer without violence. The state court specifically determined that Plaintiff "stepped in front of the officer" to interfere with the arrest of her mother. This finding served as the basis for her conviction. Under the doctrine of

---

retaliation for the exercise of his First Amendment Rights[.]")) Her complaint, however, also references Sergeant Sudano's use of force as retaliation. (Doc. 40 ¶¶ 60-62.) Plaintiff does nothing to defend that theory on summary judgment, so the Court considers it abandoned. *See Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."). But even if Plaintiff were pressing such a claim, Sergeant Sudano would seemingly be entitled to qualified immunity. That is because, at the time of Plaintiff's arrest, there was scant legal authority providing that he could face liability under the First Amendment (as opposed to the Fourth Amendment) for his use of force. *See, e.g., Graham v. Connor*, 490 U.S. 386, 395 (1989) ("[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment[.]"); *see also Hall v. Merola*, 67 F.4th 1282, 1294 (11th Cir. 2023).

collateral estoppel, Plaintiff cannot now litigate a version of events that contradicts this essential finding of the state court. *See Heid v. Rutkoski*, 143 F.4th 1255, 1262 (11th Cir. 2025). So the Court must accept that her physical interference preceded the arrest. *See Dyer v. Lee*, 488 F.3d 876, 883 n.9 (11th Cir. 2007) (explaining a § 1983 claim is barred if the "complaint makes specific factual allegations that are inconsistent with the facts upon which [the] criminal convictions were based"); *see also Magee v. Reed*, No. CV 14-1554, 2021 WL 411449, at *5 (E.D. La. Feb. 5, 2021) ("Plaintiff's conviction for resisting an officer necessarily implies that [the officer] was legally authorized to arrest and detain him."). Plaintiff's conviction provides the objective fact of probable cause (*i.e.*, her resistance), thus precluding her First Amendment claim.

Plaintiff tries to find refuge in the narrow exception established in *Nieves*, which permits a retaliation claim to proceed despite probable cause if the plaintiff can show she was arrested for an offense that is routinely unenforced against others who do not engage in protected speech. *Nieves*, 587 at 406-08. Plaintiff argues that her arrest for a "minor neighborhood disturbance" while using "elevated physical force" fits this caveat. (Doc. 82 at 13.) But the *Nieves* exception requires "objective evidence" of disparate treatment—evidence that similarly situated individuals who did *not* speak were *not* arrested. *Nieves*, 587 at 407. Plaintiff has provided no such facts.

7

She has shown only that she was arrested for a crime that a court of law subsequently found she committed. Because the arrest was supported by probable cause and her conviction stands, her ancillary First Amendment claim must fail. *See, e.g.*, *Zumwalt v. Evans*, No. 1:20-CV-01276-KWR-LF, 2021 WL 3051846, at *3 (D.N.M. July 20, 2021).

**Count XIII—IIED**

Turning to Plaintiff's IIED claim, she must show (1) deliberate or reckless infliction of mental suffering, (2) outrageous conduct that (3) caused the emotional distress, and (4) that the distress was severe. *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 594 (Fla. Dist. Ct. App. 2007). The "outrageousness" element is not a subjective standard based on a plaintiff's personal sensitivities. Rather, it is an objective, rigorous hurdle. To be outrageous, the conduct must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 279 (Fla. 1985). "While there is no exhaustive or concrete list of what constitutes outrageous conduct, Florida common law has evolved an extremely high standard." *Merrick v. Radisson Hotels Int'l, Inc.*, No. 8:06-cv-01591-T-24TGW, 2007 WL 1576361, at *4 (M.D. Fla. May 30, 2007). "Whether conduct is sufficiently outrageous to state a claim for IIED is a

8

Case 2:22-cv-00494-KCD-NPM   Document 85   Filed 12/31/25   Page 9 of 11 PageID 1397

question of law for the Court to decide." *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012).

In the context of police-citizen interactions, courts have consistently held that even conduct which might be a constitutional violation does not necessarily meet the "outrageousness" threshold for an IIED claim. In *Hernandez v. Miami-Dade Cnty.*, for example, the court evaluated an officer's use of a taser on a handcuffed and restrained suspect who was cooperating with instructions—conduct that (as alleged) was clearly excessive force. No. 1:21-CV-22656, 2022 WL 2194635, at *6 (S.D. Fla. May 31, 2022). Yet the court held that such actions did not rise to the level of outrageous under Florida law. *Id.* "[E]ven claims of intentional infliction of emotional distress based on false accusations of criminal activity and false arrest fail because such conduct, as a matter of law, is not sufficiently outrageous." *Cortez v. Home Depot U.S.A., Inc.*, No. 12-CV-14177-KMM, 2013 WL 12077478, at *4 (S.D. Fla. Jan. 31, 2013).

According to Plaintiff, Sergeant Sudano struck her multiple times, grabbed her hair, stepped on her foot, and kneeled on her back. (Doc. 86 at 15.) While these allegations describe a forceful encounter, they occurred while Sergeant Sudano was executing an arrest warrant in the face of physical obstruction—a fact Plaintiff cannot deny given her criminal conviction. Federal courts in this Circuit have often granted summary judgment on IIED

claims involving far more egregious facts. *See, e.g.*, *Casado v. Miami-Dade Cnty.*, 340 F. Supp. 3d 1320, 1332 (S.D. Fla. 2018) (rejecting IIED claim where the officers' conduct included repeatedly punching arrestee in the face, slamming him into the hood of a car, and arresting him without probable cause); *see also Triana v. Diaz*, No. 12-21309-CIV, 2014 WL 5319800, at *7 (S.D. Fla. Oct. 16, 2014) (finding no outrageous conduct where the officer "violently elbowed Plaintiff in the eye" when he was restrained); *Corbin v. Prummell*, 655 F. Supp. 3d 1143, 1165-66 (M.D. Fla. 2023) (dismissing IIED claim where the officer broke the plaintiff's leg, left her in "pool of her own urine," and delayed calling for medical assistance).

Courts "uphold claims of intentional infliction of emotional distress only in extremely rare circumstances." *Triana*, 2014 WL 5319800, at *7. This case falls far short of that standard. Because Sergeant Sudano was performing a legal duty—the execution of a warrant and the arrest of those obstructing it—and because his actions, viewed objectively, do not go beyond all possible bounds of decency, the IIED claim must fail as a matter of law.

### III. Conclusion

The law provides many paths for citizens to seek redress against police overreach. But on these specific claims and under Plaintiff's facts, those paths are closed. Because there is no genuine dispute of material fact that

10

would allow a jury to find in Plaintiff's favor, Defendants are entitled to judgment as a matter of law. Accordingly, it is **ORDERED**:

1. Defendants' Motion for Partial Summary Judgment is **GRANTED**.

2. Counts 1, 2, 3, 8, 9, 12, and 13 are **DISMISSED**.

3. Since there are other claims that remain pending, the Clerk is directed to keep the case open. The parties must comply with the existing scheduling order as to all remaining claims.

**ENTERED** in Fort Myers, Florida on December 31, 2025.

Kyle C. Dudek
United States District Judge