UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MEDA CHINGAREV,

   Plaintiff,       Case No. 2:22-cv-494-KCD-NPM

  v.

KEVIN J. RAMBOSK, BRIAN
SUDANO,

   Defendants,

             /

## **ORDER**

In this civil rights case, Plaintiff Meda Chingarev sued Collier County

Sheriff Kevin Rambosk and Sergeant Brian Sudano. She alleged excessive

force under 42 U.S.C. § 1983 and state-law battery following a June 2020

arrest. The trial ultimately came down to a credibility contest, and the jury

chose to believe the defense's account. (Doc. 131.)[1] Dissatisfied with the defense

verdict, Chingarev moves for a new trial under Fed. R. Civ. P. 59(a). (Doc. 138.)

She claims a trio of evidentiary rulings deprived her of a fair trial. For the

reasons below, her motion is **DENIED**.

### **I. Legal Standard**

Federal Rule of Civil Procedure 59(a) allows a district court to set aside

a jury verdict and order a new trial. But it does not provide a license to simply

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

second-guess the jury's decision. The bar is set deliberately high: a new trial should be ordered only if "the verdict is against the clear weight of the evidence . . . or will result in a miscarriage of justice." *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016); *see also AM Grand Ct. Lakes LLC v. Rockhill Ins. Co.*, No. 18-23576-CIV, 2022 WL 4226400, at *2 (S.D. Fla. Apr. 4, 2022). When a party seeks a new trial based on contested evidentiary rulings, as here, the hurdle is higher still. The movant must show not just a technical misstep, but an error that "caused substantial prejudice to the affected party." *Washington v. Vensure Emp. Servs., Inc.*, No. 1:21-CV-05191-JPB, 2023 WL 8027307, at *3 (N.D. Ga. Nov. 17, 2023). Put differently, "an error affects a substantial right when it probably had a substantial influence on the jury's verdict." *Perez v. Hardwick*, No. 3:19-CV-880-MMH-SJH, 2025 WL 1837523, at *1 (M.D. Fla. July 3, 2025).

## II. Discussion

To start, Chingarev faults the Court for excluding evidence about her criminal record stemming from the June 2020 encounter. (Doc. 138 at 3-8.)[2] A state juvenile court convicted her of misdemeanor obstruction, but acquitted her of battery on a law enforcement officer and resisting with violence. The Court ruled before trial that while her obstruction conviction carried preclusive

---

[2] The Court cites the page numbers generated by its electronic filing system because Chingarev failed to include page numbering as required. *See* Local Rule 1.08(a).

weight for the conduct underlying that crime and could be mentioned, her acquittals were inadmissible. At trial, Sergeant Sudano testified that Chingarev kicked him three times in his duty belt—the very conduct underlying the battery charge. Chingarev claims that this testimony "opened the door" to introducing her acquittals to impeach him. (Doc. 138 at 4.)

This evidentiary issue was addressed several times during the trial. Revisiting the record now yields the same conclusion. Even if Sergeant Sudano opened the door, which is far from clear,[3] the Court declined to admit the fact of her acquittal under Fed. R. Evid. 403. Dropping a criminal acquittal into a civil courtroom is a near-certain recipe for confusion. The jury's task here was to decide whether, by a preponderance of the evidence, Sergeant Sudano used excessive force. Introducing a not guilty verdict could taint them into believing that a state court had already legally cleared Chingarev of any physical resistance. *See, e.g.*, *Est. of Moreland v. Dieter*, 395 F.3d 747, 755 (7th Cir. 2005) ("Evidence of acquittal in a criminal action is generally irrelevant and inadmissible in a civil case involving the same incident since it constitutes a

---

[3] This is not a case where a defense witness blurted out that additional criminal charges were filed against Chingarev, leaving the jury to guess whether she had been convicted of assaulting an officer. Had Sudano introduced the *fact* of a criminal prosecution for battery, fairness might well have required letting Chingarev show how that charge ended to clear the air. But Sudano didn't do that. He stayed strictly in his lane, offering nothing more than a firsthand account of what occurred during the struggle. To be sure, he described Chingarev's physical actions that included kicking him. But as discussed below, a criminal acquittal does not establish that such conduct never occurred. Because Sudano confined his testimony to the raw facts of the encounter rather than its legal aftermath, he left nothing hanging, and he didn't open the door.

3

negative sort of conclusion lodged in a finding of failure of the prosecution to sustain the burden of proof beyond a reasonable doubt.").

An acquittal does not mean a person is innocent. It simply means the state failed to clear the much higher hurdle of proving guilt beyond a reasonable doubt. *See United States v. Irvin*, 787 F.2d 1506, 1517 (11th Cir. 1986). Forcing a civil jury to untangle those two vastly different burdens of proof would invite them to decide this case on an improper, highly prejudicial basis. *See Gaines v. Chicago Bd. of Educ.*, 717 F. Supp. 3d 746, 761 (N.D. Ill. 2024). Because the risk of confusion and unfair prejudice outweighed any relevance the acquittal offered, the Court stands by its trial rulings.

Next up is the Collier County Sheriff's Office Policy Manual. (Doc. 138 at 8.) Chingarev unsuccessfully sought to introduce the guidelines governing the agency's use of force. And the Court sustained several objections when she sought to elicit testimony about whether Sergeant Sudano's conduct varied from the manual. According to Chingarev, the Sheriff's use-of-force policy was directly relevant to whether Sergeant Sudano used excessive force, so excluding it was reversible error. (*Id.* at 9-13.)

The Court again stands by its prior rulings. "Section 1983 does not create a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a federal right." *Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002). An alleged failure to comply with a police policy

or standard would not amount to a constitutional violation, nor show one. *See, e.g.*, *Burnett v. Strength*, No. CV 108-013, 2008 WL 4298465, at *3 (S.D. Ga. Sept. 16, 2008). "Thus, evidence of police standard operating procedures or policies is [generally] irrelevant." *Candonoza v. Royston*, No. 4:16-CV-0048-HLM, 2018 WL 5023425, at *4 (N.D. Ga. Mar. 5, 2018); *see also Thompson v. City of Chicago*, 472 F.3d 444, 455 (7th Cir. 2006) ("The [Supreme] Court [has] concluded that because police rules, practices and regulations vary from place to place and from time to time, they are an unreliable gauge by which to measure the objectivity and/or reasonableness of police conduct.").

That aside, handing the jury a complex administrative policy risked replacing the constitutional standard with a bureaucratic one. *See, e.g.*, *Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 814 (11th Cir. 2017) ("The risk of confusing the jury on this point was not insubstantial, and the court did not abuse its considerable discretion by trying to mitigate that risk."). And because Chingarev's theory of the case was that she did nothing to warrant any force, rather than arguing the force was poorly calibrated, the introduction of the policy matrix carried even more danger of misleading the jury under Rule 403. *See Edgerson v. Matatall*, No. 10-14954, 2014 WL 172258, at *10 (E.D. Mich. Jan. 15, 2014).

Chingarev's final complaint relates to the admission of a video (Defendants' Exhibit 8-3) showing the scene inside her house immediately

after she was placed in handcuffs. The video captures her mother actively resisting while another deputy attempted to secure her. Chingarev argues that under cases like *Robinson v. Rankin*, 815 F. App'x 330 (11th Cir. 2020), a Fourth Amendment inquiry must be strictly individualized. So, her mother's post-arrest emotional conduct was completely irrelevant and highly prejudicial to her own claims.

Chingarev is right that the Fourth Amendment requires an individualized assessment. But she is wrong that the video holds no relevance. Officers do not operate in a sterilized vacuum. They often navigate fluid, chaotic environments. The video was not admitted to punish Chingarev for her mother's behavior, but to show the jury the exact environment the deputies were managing during the encounter. Most importantly, the video provided objective evidence of Chingarev's own physical condition and demeanor immediately after the alleged beating.

Chingarev testified that Sergeant Sudano slammed her to the floor multiple times, pulled her hair violently, and stomped on her feet. The video, recorded moments later, gave the jury a first-hand look at her visible injuries— or lack thereof—and her interactions with the deputies. Because the video captured the immediate aftermath of the incident and was intrinsically linked to the defense's narrative, its probative value easily cleared the Rule 403 hurdle.

6

Chingarev stresses that even if no single ruling requires a new trial, their collective weight upended her right to a fair proceeding. (Doc. 138 at 16-17.) That is a familiar argument, but it fails here for a simple reason: you cannot multiply zero. "[W]here [t]here [is] no error in any of the court's rulings," as here, "the argument that cumulative trial error requires [reversal] is without merit." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012). This trial came down to whether the jury believed Chingarev or the deputies, and the Court declines to upset their lawful choice.

**ORDERED** in Fort Myers, Florida on June 29, 2026.

Kyle C. Dudek
United States District Judge